UNITED STATES DISTRICT COURT COTE
SOUTHERN DISTRICT OF NEW YORK

JUSTIN ARMSTRONG

Plaintiff,

-v-

"JOHN DOE" NEW JERSEY STATE
TROOPERS 1-5, 150 RFT VARICK CORP.
d.b.a. GREENHOUSE USA,"JOHN DOE"
GREENHOUSE SECURITY 1 & 2,
JON BAKHSHI, BARRY MULLINEAUX,
FRANK PORCO, JOHN BEST, MERLIN BOB
WILLIS, TIM REGISFORD, GREG
ANNUNZIATA and W & M OPERATING
L.L.C.,

Defendants.

**10 CIV 2702**

**COMPLAINT**

**Jury Trial Demanded**



COMES NOW Plaintiff, Justin Armstrong ("Armstrong" or "Plaintiff"), by and through his undersigned attorneys, The Law Offices of Neal Brickman, P.C., 317 Madison Avenue, 21st Floor, New York, New York 10017, and as and for his Complaint against Defendants, "John Doe" New Jersey State Troopers 1-5 ("Trooper 1-5" or collectively, "Troopers"), 150 RFT Varick Corp. d.b.a. Greenhouse USA ("Greenhouse"), "John Doe" Greenhouse Security 1 & 2, Jon Bakhshi ("Bahkshi"), Barry Mullineaux ("Mullineaux"), Frank Porco ("Porco"), John Best ("Best"), Merlin Bob Willis ("Willis"), Tim Regisford ("Regisford"), Greg Annunziata ("Annunziata") and W & M Operating L.L.C. ("W & M"), (together, "Defendants") states and alleges the following:

## STATEMENT PURSUANT TO LOCAL CIVIL RULE 1.9

1.      Justin Armstrong is an individual citizen of the United States of America and as such has no interest or subsidiaries that need to be disclosed.

## NATURE OF ACTION

2. This is an action for damages arising from the illegal, discriminatory, jealousy-induced and alcohol-fueled assault by a gang of five off-duty New Jersey State Troopers of the Plaintiff, a 23-year-old African American male, who had been enjoying a night out with friends at the exclusive nightclub Greenhouse, whose employees aided and assisted in the assault and then secreted the assailants out a side entrance to avoid detention by the New York City Police Department ("NYPD").

3. Unprovoked, the Troopers smashed two "fifth-sized" bottles of alcohol over Armstrong's head and savagely beat and kicked him. Because Armstrong was the only African American in the incident, Greenhouse security singled him out and restrained Armstrong -- turning him into a human punching bag -- and allowed the Troopers to finish their five-against-one pounding. Then, Greenhouse security used excessive force and dragged Armstrong out of the nightclub's front entrance, while escorting the white assailants out the side door and allowing them to escape custody or identification.

4. The unprovoked assault and subsequent actions violate, *inter alia*, Title II of the Civil Rights Act ("Title II'), 42 U.S.C. §2000a, 42 U.S.C §1981 ("§1981") as amended by the Civil Rights Act of 1991, 42 U.S.C. §1985 ("§1985"), 42 U.S.C. §1986 ("§1986"), in addition to New York State common law, as well as, New York Executive Law §296 et seq., New York State General Obligations Law §11-101 et seq., New York State Alcoholic Beverage Control Law §65, New York City Administrative Code ("NYCAC") §8-107 et seq., and NYCAC §20-360, et seq.

2

## PARTIES

5.      Plaintiff, Justin Armstrong, is a resident of New York County and the State of New York.

6.      Upon information and belief, Defendants "John Doe" New Jersey Troopers 1-5 are residents of the State of New Jersey, who used their official badges to gain entrance and be given VIP treatment by Greenhouse USA, a nightclub located at 150 Varick Street, New York, New York 10013.

7.      Greenhouse USA is the d.b.a. identity of Defendant 150 RFT Varick Street Corporation, a domestic business corporation registered with the New York State Department of State.

8.      Defendants, "John Doe" Greenhouse Security 1 & 2, are employees of Greenhouse and whose identities are known to the establishment.

9.      Defendants Jon Bahkshi, Barry Mullineaux, Tim Regisford and Merlin Bob Willis have portrayed themselves as co-owners of Greenhouse USA to the media.

10.     Defendant Frank Porco, upon information and belief, is the President of 150 RFT Varick Corporation, according to the corporation's insurance broker, Malpigli & Salvaggio Insurance, which also disclosed that Defendant Greg Annunziata is the Vice President of 150 RFT Varick Corporation. Defendant Porco is also listed as the entity's process contact with the New York Department of State, and whose address is listed at c/o. Lucky Stiffs, 211 Avenue A, New York, New York 10009.

11.     Defendant John C. Best is listed as a principal on the liquor license for 150 RFT Varick Corporation. The other principals listed are Defendants Porco, Willis, and Bahkshi.

3

12.     Defendant W & M Operating L.L.C. is registered with the Office of the New York City Register as the owner of 150 Varick Street, and whose address is 42-12 28th Street, Long Island City, New York 11101.

## JURISDICTION

13.     This Court has jurisdiction of this matter pursuant to 18 U.S.C. §1331 and 28 U.S.C. § 1343.  In addition, this Court has pendant jurisdiction to hear and decide the claims arising under New York State Law and the New York City Administrative Code pursuant to 18 U.S.C. 1367.

14.     Venue is proper in this district because the events giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

15.     Plaintiff Justin Armstrong, a 23-year-old African American man, graduated from Columbia University in 2008.  After graduation from that prestigious institution, Plaintiff co-founded and was operating a successful entertainment and promotions company until he suffered severe injuries as the result of an assault that occurred on or about January 6, 2010 at Greenhouse.

16.     Armstrong's night began with a simple text message to get together at the Greenhouse for some fun.  It ended with him dazed and covered in blood after being knocked unconscious and beaten by a gang of thugs who dishonored, upon information and belief, their profession as New Jersey State troopers.

17.     At or about one o'clock in the morning on January 6, 2010, Armstrong joined a growing group of friends at the Greenhouse including Sansho Scott.  Scott was a promoter for the club, so he and his friends assembled at his usual table number five in the

VIP area and spread to table number six as the group expanded to include others who knew Scott and Armstrong, including a trio of young women who are students at the Fashion Institute of Technology ("F.I.T.").

18.     Armstrong's group -- young and good-looking -- matched the club's website description of Greenhouse Tuesday: "The chic and fashionable crowd joins Manhattan's gorgeous and elite" with DJs "who spin a mix of pop, rock, hip-hop and the 80s."

19.     Dressed and acting like they were refugees from the 60s, or maybe the 70s, the group of five white middle-aged men, sitting three tables away from Armstrong, looked out of place. They wore collared shirts and black jackets. They had mustaches and slicked back hair. They were muscular.

20.     Upon information and belief, at least one was armed, and all of them soon became dangerous. They are the Defendants: "John Doe" Troopers 1-5.

21.     The VIP area of Greenhouse is distinctive from the rest of the nightclub because it is an elevated area adjacent to the dance floor. VIPs can watch the action, while the club can display its most attractive guests. The club limits access to the area to the "chic and fashionable" or those willing to pay for "bottle service." "Bottle service" is a feature of many exclusive, upscale nightclubs where patrons can purchase entire bottles of liquor and mixers for their consumption, usually at an extremely marked up price.

22.     Upon information and belief, the Troopers flashed their badges to get into the VIP area, and their entry onto 'the stage" was approved by club co-owner, Barry Mullineaux. They were not only patrons, but the co-owner's special guests.

5

23. "John Doe" Troopers 1-5 were observed being seated in the "VIP" area by a manager of Greenhouse.

24. As late night turned into morning, the troopers, upon information and belief, bought two bottles of alcohol – Kettle One vodka and Patron tequila -- and supplemented the bottles with additional drinks from the bar. Upon information and belief, at least one of the Troopers was visibly intoxicated, yet continued to be served.

25. The Troopers began lusting for female companionship and had their eyes set on the three young F.I.T. students of Armstrong's group. The young ladies went over and briefly talked with the men, but returned and reported that The Troopers were "creepy" and had asked if the girls wanted to go to a hotel.

26. The clock crept closer to closing time. The Troopers kept eyeing the young ladies. At or about three thirty in the morning, Trooper #1 motioned to Armstrong to come over to his group's table. Armstrong obliged and started to chat with Trooper #1, who wanted to know more about the young ladies.

27. A few moments later, Trooper #2 rejoined his group and interrupted the discussion between Trooper #1 and Armstrong, with an abrupt demand, "Is there a fucking problem here?" Apparently, Trooper #2 did not know that Armstrong was an invited guest at the table. Trooper #2 only saw a young African American who, upon information and belief, he thought was standing in way of their seduction of the young women. Trooper #2 told Armstrong, "I will fucking kill you" and "Buck the fuck up." Armstrong decided discretion is the better part of valor and turned to return to his group.

28. Trooper #2 responded, upon information and belief, by smashing a bottle of liquor over the back of Armstrong's head, then began punching him. The other

6

troopers joined in fray and Armstrong attempted to defend himself. A second bottle --
maybe the Kettle One, maybe the Petron -- slammed against Armstrong's head. Whichever
bottle, it served its purpose and did its intended damage. The strapping young Armstrong
was out cold; he had lost consciousness. The Troopers were not done. They relentlessly
kicked his limp body. Soaked in alcohol from the assailants' liquor-bottle weapons, and with
blood gushing from the three-inch gash in the back of his head, Armstrong regained
consciousness as "John Doe" Greenhouse Security #1 lifted him from the floor in a full-
nelson, his arms trapped behind his head.

29.      Instead of subduing the white aggressors, "John Doe" Greenhouse
Security 1 & 2 singled out the young African American and turned him into a human
punching bag. They permitted the Troopers to land at least four more punches to
Armstrong's face before dragging Armstrong away from the Troopers' alcohol-induced fury.
In total, upon information and belief, the Troopers struck Armstrong at least ten times with
their fists and smashed two bottles across his head.

30.      While "John Doe" Greenhouse Security #1 and #2 dragged Armstrong
out the front door of the club, other Greenhouse employees allowed the thug Troopers to
gather their belongs and then showed them out a side entrance which prevented their
apprehension by New York City Police Department officers, who had been summoned and
were outside the front entrance.

31.      Simply because he was the only African American, John Doe"
Greenhouse Security turned Armstrong over to the waiting NYPD officers and EMS first
responders. Armstrong pleaded with the officers to go inside and capture his assailants, but

7

the NYPD officers delayed to take his statement and photograph him while the EMS technician treated his bloodied face and head.

32. The NYPD did not enter the club until approximately thirty minutes after the melee. By then it was too late to apprehend or even identify the assailants.

33. Still dazed, Armstrong took a cab to his Lower East Side apartment and collapsed for three days. His friends described him as dazed and delusional. He slept for 18 hours a day, except when nightmares of having a heart attack interrupted his sleep.

34. On or about Saturday, January 10, 2010, Armstrong had the strength to complete the police report on the incident. Complaint # 2010-001-00191 indicated that even three days later his face was still bruised and that he had black eyes.

35. The savage beating inflicted serious and severe trauma both physically and mentally. Armstrong was admitted to the hospital and treated for physical and psychological injuries and damages. Plaintiff suffered severe humiliation, emotional distress and scared for his safety and well-being. Plaintiff will hereafter continue to seek further medical assistance, testing, care and attention for injuries as a result of the assault. Additionally, as a result of the assault, Plaintiff was confined to bed and home and has lost and will continue to lose the enjoyment of life.

36. After a series of violent incidents at the Greenhouse, including a stabbing and shooting, NYPD detectives quickly began looking into the incident involving Armstrong. Upon information and belief, NYPD Detective Vergona visited the crime scene and screened video of the assault captured by the Greenhouse security surveillance cameras. The Detective confirmed that the assault took place. Vergona said Armstrong

8

was easy to spot in the video because of his tee-shirt; dark-colored with large white-block letters which read, "THE END."

37. The tee shirt was apropos to what happened to Armstrong's business. Prior to the defendant's illegal and unprovoked attack, Armstrong earned a lucrative salary with his brains, good looks and business savvy. In a few minutes of fury, Defendant "John Doe" Troopers 1-5 robbed him of his future.

38. Prior to the assault, Armstrong co-founded and was running a successful entertainment and promotions company. In 2009, Armstrong and his partner were awarded lucrative agreements to co-host "gifting suites."

39. "Gifting suites" are staged concurrently with major events that attract celebrities, such as the Academy Awards, Sundance Film Festival and the Super Bowl. Armstrong's talent was convincing product makers to pay a fee to sponsor a suite. In return, the sponsors got their goods in the hands of celebrities. When the celebrities visited the suites, the sponsors took pictures of their products in the hands of celebrities and the celebrities left with a bag of the sponsors "gifts" to try them out and tell their friends. It was the classic win-win win situation for the celebrities, the sponsors and the hosts, who split the sponsorship fees of up to one hundred thousand dollars.

40. Due to his prior success, Armstrong's company was preparing to host "gifting suites" at the Sundance Film Festival in Park City, Utah from January 21 to January 31, 2010; and at the Super Bowl in South Florida on February 7, 2010. Prior to the assault, Plaintiff's company obtained commitments from numerous brand label sponsors of which he would be entitled to twenty-five percent of the fees.

9

41. "THE END" came due to injuries caused by the Defendant "John Doe" Troopers 1-5's assault, aided by Defendants Greenhouse Security 1 and 2 restraining him as a punching bag, fueled by the alcohol sold by the Greenhouse and ignited by the Plaintiff's race.

42. Suffering from what had been diagnosed as post-concussion syndrome, Armstrong was unable to perform his duties on behalf of his sponsors. His company lost the lucrative agreements to host these "gifting suite" events and the substantial profits that it would have earned. The loss of these two, very prominent events caused Plaintiff's company to go out of business and the resulting cancellations caused serious damage to Plaintiff's reputation.

43. In addition, Plaintiff has also been forced to give up an apartment he maintained in San Diego that facilitated his work on the West Coast.

44. An investigation by detectives from the NYPD's First Precinct confirmed Armstrong was assaulted at Greenhouse on January 6, 2010. The NYPD detective viewed video from the nightclub's security cameras in which Armstrong was easily identified because of his "THE END" shirt. The detective said the video corroborated the assault.

45. Employees of Defendant Greenhouse went through the motions of creating a DVD of the security camera video. However, when a NYPD detective tried to view it later, there was no data on the disc. Upon information and belief, the employees tried to deceive the detective, who upon the discovery returned to the Greenhouse to obtain another copy, but was informed that defendant Greenhouse destroyed the video evidence.

46. The NYPD considers the incident an open case of felony assault.

10

47.     All of the Defendants are jointly and severally liable for all of the acts complained of and damages sustained by the Plaintiff and responsible for the whole of Plaintiff's damages herein.

48.     Plaintiff reserves his right to file a notice of claim against the State of New Jersey because of the actions by "John Doe" State Troopers 1 -5, who used their official capacity as State of New Jersey law enforcement officers to gain entrance to Greenhouse.

49.     Notice of claim requirements do not apply to Federal civil rights claims brought pursuant to 42 U.S.C. § 1983

### AS AND FOR A FIRST CLAIM
### Violation of 42 U.S.C. § 1983
### Deprivation Of Rights under Color of Law
### (against "John Doe" Troopers 1-5)

50.     Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "49" of this complaint, with the same force and effect as is fully set forth herein.

51.     The badge of a New Jersey State Trooper is one of honor.  "John Doe" Troopers 1-5 dishonored their badges, and used them as a ticket to infamy.

52.     Upon information and belief, and according to Greenhouse owners and managers, "John Doe" Troopers 1-5, flashed their badges to gain entrance to the Greenhouse on or about January 5, 2010.  The club acquiesced to the officers' desires, and because of their status as law enforcement agents of the State of New Jersey, Greenhouse afforded them and gave them VIP treatment.  The club served them at least two fifths of alcohol and other numerous single drinks.

11

53. When young female acquaintances of Armstrong's would not submit to the Defendants sexual advances, Defendants "John Doe" Troopers 1-5 targeted Plaintiff Armstrong because of his race and without probable cause, provocation or any reason to believe that Armstrong was engaged in any criminal activity, and assaulted and battered Armstrong with excessive force.

54. Because of his race, Greenhouse Security singled out Armstrong to restrain and allowed Defendants' "John Doe" Troopers 1-5 to continue their battery, aiding and assisting the crime, and in violation of the rights, privileges and immunities afforded to Armstrong by the Fourteenth Amendment of the Constitution, 42 U.S.C. § 1983, and the common law of New York State, including but not limited to, Armstrong's rights to equal protection of the laws.

55. Defendants' actions inflicted severe and traumatic physical, mental and economic damages. Plaintiff was hospitalized for treatment of the physical damages and continues to be treated for subsequent physical, psychological and emotional injuries as a result of the assault. The attack also caused severe humiliation, emotional distress, and fear for his safety and well-being. Additionally, as a result of the assault, Plaintiff was confined to bed and home rest, and has lost business opportunities as well as the everyday enjoyment of life.

56. The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

### AS AND FOR A SECOND CLAIM
### Violation of 42 U.S.C. § 1981
### Protection of Equal Rights
### (against all Defendants)

57. Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "56" of this complaint, with the same force and effect as is fully set forth herein.

58. Plaintiff is African American and is thus a member of a racial minority.

59. All the Defendants intended to and did discriminate on the basis of Plaintiff's race. Among other things, Plaintiff was targeted as a young black male at an upscale nightclub and savagely beaten by five white male patrons. In addition, instead of stopping the assault against Plaintiff, a young African American male, the white employees of Defendant Greenhouse participated and perpetuated the assault of Plaintiff by five white males. Rather than assist the African American Plaintiff who had been assaulted, the employees of Defendant Greenhouse then assisted in the escape of the Defendant Troopers 1-5 so that they would not be identified and apprehended by the NYPD.

13

60. The discrimination concerned one or more of the activities enumerated in 42 U.S.C. § 1981. Specifically, Plaintiff Armstrong was denied the full and equal benefit of all laws and proceedings for the security of persons and property as was enjoyed by Caucasian patrons at Greenhouse on the morning of January 6, 2010.

61. The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A THIRD CLAIM
### Title II, 42 U.S.C. § 2000a – Equal Access Violations
(against Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C.)

62. Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "61" of this complaint, with the same force and effect as is fully set forth herein.

14

63.    Title II of the Civil Rights Act of 1964, 42 U.S.C. §2000a, prohibits discrimination or segregation in places of public accommodation: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

64.    The Greenhouse nightclub is a place of public accommodation.

65.    On January 6, 2010, Plaintiff was deprived of equal use and enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Greenhouse nightclub by Defendants 150 RFT Varick Corp., d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and  W & M Operating L.L.C.

66.    Defendants acted with discriminatory intent, motive and/or purpose to deprive Plaintiff of equal use and enjoyment of Greenhouse's services.   As an African American male, Plaintiff was treated differently from the five white "John Doe" Troopers.

67.    The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two

15

Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A FOURTH CLAIM
### Violation of 42 U.S.C. § 1985
### Conspiracy to Interfere With Civil Rights

68.     Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "67" of this complaint, with the same force and effect as is fully set forth herein.

69.     Plaintiff is African American and is thus a member of a racial minority.

70.     Defendants "John Doe" Troopers 1-5 engaged in a conspiracy to commit assault and battery against Armstrong.

71.     Employees of Greenhouse joined the conspiracy when they held Armstrong in a "full nelson" and allowed "John Doe" Troopers 1-5 to continue their assault.

72.     Greenhouse employees assisted the conspiracy when they aided and abetted the escape of "John Doe" Trooper from the club to avoid detention or identification by the NYPD.

73.     Greenhouse employees aided and abetted the conspiracy by not protecting the video of the assault after a detective of the NYPD requested a copy of the video.

74.     The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco,

16

John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C.

are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the

Defendants for compensatory damages in an amount to be determined at trial, but in no

event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two

Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of

this action (including reasonable attorneys' fees); and any such other and further relief to

Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A FIFTH CLAIM
### Violation of 42 U.S.C. §1986
### Action for Neglect to Prevent

(against Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe"
Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best,
Merlin Bob Willis, Tim Regisford, Greg Annunziata And W & M Operating L.L.C.)

75. Plaintiff repeats, reiterates and re-alleged each and every allegation

contained in paragraphs "1" through "75" of this complaint, with the same force and effect as

is fully set forth herein.

76. 42 U.S.C. §1986 provides that:

> "Every person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in section
> 1985 of this title, are about to be committed, and having
> power to prevent or aid in preventing the commission of
> the same, neglects or refuses so to do, if such wrongful
> act be committed, shall be liable to the party injured, or
> his legal representatives, for all damages caused by
> such wrongful act, which such person by reasonable
> diligence could have prevented; and such damages
> may be recovered in an action on the case; and any
> number of persons guilty of such wrongful neglect or
> refusal may be joined as defendants in the action.

17

77.     Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. were negligent in providing the alcohol that fueled the conspiracy of the Troopers to assault Armstrong.

78.     Greenhouse was negligent in failing to provide adequate security to prevent the conspiracy to assault Armstrong. Once underway, Greenhouse had the power to stop and prevent further injury, but instead Greenhouse aided the conspiracy by restraining Armstrong while the Troopers continued their assault of Armstrong.

79.     Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata And W & M Operating L.L.C. Greenhouse then joined the conspiracy by aiding to the conspirators to escape out a side exit to avoid apprehension and identification.

80.     Defendant 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata And W & M Operating L.L.C. have continued to aid the conspirators by destroying video evidence of the conspiracy to assault.

81.     The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

18

82.    Under §1986, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse

USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco,

John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata And W & M Operating L.L.C.

Greenhouse are liable for all of the damages caused by the assault.

WHEREFORE, Armstrong respectfully demands judgment against the

Defendants for compensatory damages in an amount to be determined at trial, but in no

event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two

Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of

this action (including reasonable attorneys' fees); and any such other and further relief to

Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A SIXTH CLAIM

**Discrimination in contravention of New York State Executive Law §296 et seq.**
(against Defendants150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry
Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata
and W & M Operating L.L.C.)

83.    Plaintiff repeats, reiterates and re-alleged each and every allegation

contained in paragraphs "1" through "82" of this complaint, with the same force and effect as

is fully set forth herein.

84.    New York State Executive Law §296 2(a) prohibits racial discrimination

by any person, being the owner, lessee, proprietor, manager, superintendent, agent or

employee of any place of public accommodation.

85.    150 RFT Varick Street d.b.a. Greenhouse USA is a place of public

accommodation.

86.    On or about January 6, 2010, employees of Greenhouse discriminated

against Plaintiff Armstrong, an African American, when they singled him out for restraint

19

because of his race while allowing his white attackers to continue their assault.

87.     Employees of Greenhouse continued their discrimination against Armstrong when they wrongly assumed Armstrong instigated the incident and prejudicially turned him over to NYPD officers, while allowing his white assailants to exit out a side entrance to avoid custody or identification.

88.     The Defendants' discrimination caused serious injuries and subsequent damages.

89.     The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE**, Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A SEVENTH CLAIM
**Discrimination in contravention of New York City Administrative Code §8-107 et seq.**
(against Defendants150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C.)

20

90.     Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "89" of this complaint, with the same force and effect as is fully set forth herein.

91.     New York City Administrative Code §8-107 4(a) prohibits discrimination on the basis of race by any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation.

92.     150 RFT Varick Street d.b.a. Greenhouse USA is a place of public accommodation

93.     As stated elsewhere herein, employees of Greenhouse discriminated against Plaintiff Armstrong because of his race causing serious injuries and subsequent damages.

94.     The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

21

## AS AND FOR A EIGHTH CLAIM
### Assault and Battery

95.     Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "94 of this complaint, with the same force and effect as is fully set forth herein.

96.     Defendants "John Doe" Troopers 1-5 had intentional physical contact with Plaintiff Armstrong without his consent. "John Doe" Troopers 1-5 targeted Plaintiff and savagely punched him in the body and face numerous times and at least twice struck him over the head with bottles of alcohol.

97.     Greenhouse Security also had intentional physical contact with Plaintiff Armstrong without his consent. Greenhouse Security restrained Plaintiff Armstrong him in a full "nelson hold," pinning Plaintiff's arms behind his back and allowed "John Doe" Troopers 1-5 to continue to violently hit Plaintiff about the face, head and body. Greenhouse Security did nothing to restrain "John Doe" Troopers 1-5. In addition, Greenhouse Security used excessive force to drag Plaintiff out of the front entrance of the club.

98.     As a result of the assault by "John Doe" Troopers 1-5 and Greenhouse Security, Plaintiff Armstrong suffered damages, serious injuries, and severe trauma both physically and mentally. Plaintiff Armstrong was caused to sustain injuries that resulted in hospital admission and medical treatment for physical, psychological and emotional injuries and other damages. Plaintiff also suffered severe humiliation, emotional distress, and fear for his safety and well-being. Plaintiff will hereafter continue to seek further medical assistance, testing, care and attention for injuries as a result of the assault. Additionally, as

22

a result of the assault, Plaintiff was confined to bed and home and has lost and will continue to lose the enjoyment of life.

99.    The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A NINTH CLAIM
### Negligence
(Against Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata And  W & M Operating L.L.C.)

100.    Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "99" of this complaint, with the same force and effect as is fully set forth herein.

101.    Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. owed Plaintiff a common law duty to ensure the safety of the premises and protect Armstrong and other

23

patrons of Greenhouse from foreseeable harm, including criminal acts of third parties such as assault on the premises.

102.    Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. breached their duty of care to Plaintiff Armstrong by failing to provide minimal precautions against the foreseeable criminal acts of "John Doe" Troopers 1-5 who are responsible for the assault of Armstrong and/or for failing to control the conduct of persons on the premises of Greenhouse when defendants had the opportunity to do so and are reasonably aware of the need for such control.

103.    The assault by "John Doe" Troopers 1-5 and Greenhouse Security was foreseeable and not unexpected after Greenhouse employees fueled the foreseeable rage with additional sales of alcohol -- despite the obvious intoxication and increasing unruliness of the Troopers.

104.    Greenhouse security increased the likelihood of unruly behavior by allowing, upon information and belief, at least one of the Troopers to enter the club with a gun, boosting that Trooper's confidence to do what he wished if any disturbance broke out, and to do it with deadly force if necessary.

105.    When "John Doe" Troopers 1-5 threatened Armstrong verbally and then assaulted him physically in the "VIP" area, including smashing two bottles of alcohol over his head, Greenhouse Security physically restrained Plaintiff Armstrong as "John Doe" Troopers 1-5 continued to assault Plaintiff.  Greenhouse Security did nothing to restrain

24

"John Doe" Troopers 1-5 as the assault of Plaintiff continued. Greenhouse Security then forcibly dragged Plaintiff out of the front entrance of Greenhouse.

106.    The assault of Plaintiff was foreseeable and not unexpected, given the fact there have been a series of prior acts of violence at Greenhouse.

107.    Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. breached their duty of care to Plaintiff Armstrong by failing to provide minimal safety precautions against the foreseeable criminal acts of "John Doe" Troopers 1-5 and Greenhouse Security who are responsible for the assault of Armstrong.

108.    Due to negligence, carelessness and recklessness of Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C., Plaintiff suffered damages including serious injuries and severe trauma both physically and mentally. Plaintiff also suffered severe humiliation and emotional distress. Plaintiff will hereafter continue to seek further medical assistance, testing, care and attention for injuries as a result of the assault. Additionally, as a result of the assault, Plaintiff was confined to bed and home and has lost and will continue to lose the enjoyment of life.

109.    The negligence, carelessness and recklessness of Defendants, 150 RFT Varick Corp. d.b.a. Greenhouse USA, "John Doe" Greenhouse Security 1 & 2, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg

Annunziata and W & M Operating L.L.C., caused Armstrong to suffer the loss of earnings and economic opportunities.

110.    The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A TENTH CLAIM
### Negligent Hiring, Training, Retention and Supervision
(against Defendants150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C )

111.    Plaintiff repeats, reiterates and re-alleged each and every allegation contained in paragraphs "1" through "110" of this complaint, with the same force and effect as is fully set forth herein.

112.    Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA,   Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and  W & M Operating L.L.C owe a duty to Armstrong, indeed all patrons of the Greenhouse, to hire, train, retain and supervise security personnel, who will prevent violence

among patrons.  More important, the Defendants have a duty to train security personnel to act without prejudice should foreseeable incidents break out and to not take actions that perpetuate the violence among patrons.

113.    As set forth herein, members of Greenhouse Security, among other things, committed numerous torts by creating the conditions that allowed "John Doe" Troopers 1-5 to assault Armstrong.  Then, Greenhouse employees failed to stop the on-going assault of Plaintiff Armstrong.  Greenhouse employees took sides in the assault and assisted the assailants by restraining Armstrong in a full "nelson"" while at the same time failing to restrain his assailants.

114.    Adding insult to their injuries, Greenhouse Security then used excessive force dragging Armstrong out of the front entrance of the club while allowing his assailants to escape detention and identification out another exit.

115.    The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts.  Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and  W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

27

## AS AND FOR A ELEVENTH CLAIM

**Violation of New York State General Obligations Law Section 11-101(1) (Dram Shop Act)**
(against Defendants150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry
Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata
and W & M Operating L.L.C.)

116.    Plaintiff repeats, reiterates and re-alleged each and every allegation

contained in paragraphs "1" through "115" of this complaint, with the same force and effect

as is fully set forth herein.

117.    General Obligations Law Section 11-101(1) (Dram Shop Act) permits

third parties injured or killed by an intoxicated person to recover from the server or seller of

alcohol.

118.    On January 6, 2010, "John Doe" Troopers 1-5 assaulted Armstrong at

the Greenhouse nightclub inflicting severe physical and mental injuries and caused

Armstrong economic damages.

119.    "John Doe" Troopers 1-5 were observed in the "VIP" area of

Greenhouse drinking for several hours.   Upon information and belief, Greenhouse

employees served "John Doe" Troopers 1-5 two bottles of alcohol.  "John Doe" Troopers 1-5

acted visibly intoxicated, yet, upon information and belief, and according to Greenhouse

owners, the nightclub continued to serve the intoxicated officers individual drinks at a bar

across from the VIP area.

120.    Other signs that off-duty "John Doe" Troopers 1-5 were clearly

intoxicated were their display of their badges, and more serious, the revealing of a firearm,

in violation of regulations.   In addition, the drunken troopers became unruly in their

harassing female patrons.

28

121.    Ultimately, "John Doe" Troopers 1-5 proved their intoxication with an unprovoked and savage attack of Plaintiff Armstrong.

122.    Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C are liable for the damages caused by their unlawfully selling and/or unlawfully assisting in procuring liquor for Defendants "John Doe" Troopers 1-5 who were intoxicated.

123.    The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

124.    Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C are liable for the damages caused by their causing or contributing to the intoxication of the "John Doe" Troopers 1-5.

125.    As a result of the foregoing, Plaintiff is entitled to actual and exemplary damages.

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of

29

this action (including reasonable attorneys' fees); and any such other and further relief to

Mr. Armstrong as this Court deems just, fair and proper.

## AS AND FOR A TWELFTH CLAIM

### Breach of Duty to Maintain Security Guard Rosters and to Protect Video Evidence in contravention of Requirements for Cabarets under New York City Administrative Code

(against Defendants150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C)

126. Plaintiff repeats, reiterates and re-alleged each and every allegation

contained in paragraphs "1" through "125" of this complaint, with the same force and effect

as is fully set forth herein.

127. Title 20, Subchapter 20 of the New York City Administrative Code

requires among other things that "a public dance hall or cabaret shall maintain a roster of all

security guards working at any given time" (§ 20-360.1c).

128. In breach of this duty, Defendants have not been able to identify "John

Doe" Security 1 or 2 for officers of the NYPD or Plaintiff's attorneys.

129. Title 20, Subchapter 20 of the New York City Administrative Code §

20-366 requires notification of change of directors, stockholders, and officers within five

days. However phone calls by Plaintiff's attorneys to the City of New York to obtain the

names on the cabaret license for 150 RFT Varick Street d.b.a. Greenhouse USA have been

answered with the response that no such licensee exists.

130. New York City Administrative Code § 20-360.2 contains a number of

specific requirements for video surveillance of all entrances and exits used by patrons of

cabarets and nightclubs. Among them, maintaining a video surveillance camera system

that will provide "easily discernible images recorded at all times", "capable of transferring the

30

recorded images to a portable form of media," and that video be "preserved for a minimum of thirty days so that they may be made available to the department, the police department and other government agencies acting in furtherance of a criminal investigation or a civil or administrative law enforcement purpose."

131.    Upon information and belief, NYPD Detective Vergona viewed video of inside surveillance cameras on or about the week of January 10, 2010 which showed the assault of Plaintiff Armstrong.  Upon information and belief, no "easily discernable images" from any outside cameras were available.  The detective requested that Greenhouse employees transfer the video to a DVD.  However, when he subsequently tried to view the DVD, it did not contain the video.  Detective Vergona returned to Greenhouse, within thirty days of the incident, only to be told that the system had recorded over the video of the incident in violation of New York City Administrative Code requirements.

132.    Defendants' negligence in maintaining a proper video surveillance system and failing to preserve the video of the assault of Armstrong prevents identification of the assailants.  Because he will not be able to fully recover his damages from all the parties who inflicted them, Armstrong will suffer further damages by Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and W & M Operating L.L.C.

133.    The employees of Greenhouse were acting within the scope of their employment when they committed the foregoing tortious acts. Accordingly, Defendants 150 RFT Varick Corp. d.b.a. Greenhouse USA, Jon Bahkshi, Barry Mullineaux, Frank Porco, John Best, Merlin Bob Willis, Tim Regisford, Greg Annunziata and  W & M Operating L.L.C. are liable for those acts under the doctrine of respondeat superior.

31

**WHEREFORE,** Armstrong respectfully demands judgment against the Defendants for compensatory damages in an amount to be determined at trial, but in no event less than Nine Hundred Thousand Dollars ($900,000.00); punitive damages of Two Million Seven Hundred Thousand ($2,700,000.00) Dollars; the costs and disbursements of this action (including reasonable attorneys' fees); and any such other and further relief to Mr. Armstrong as this Court deems just, fair and proper.

## JURY DEMAND

Plaintiff Justin Armstrong demands trial by jury of all the issues raised herein.

Dated:      New York, New York
            March 23, 2010

THE LAW OFFICES OF NEAL BRICKMAN,
P.C.

By: _____
Neal Brickman (NB0874)

317 Madison Avenue, 21st Floor
New York, New York 10017
(212) 986-6840

*Attorneys for Plaintiff*
*Justin Armstrong*

32